# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Constantino Perales, | ) | |
| Plaintiff, | ) | No. 15 C 10110 |
| v. | ) | Judge Virginia M. Kendall |
| County of LaSalle, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Constantino Perales filed a Corrected Second Amended Complaint against the County of LaSalle; the LaSalle County Sheriff's Office, Sheriff Thomas J. Templeton, Jail Superintendent Jason Edgcomb, Correctional Officer Kerry Von Ruden; and Correct Care Solutions LLC, its personnel Dr. Adeyemi O. Fatoki, Nurses Denise Kaszynski, Rita Alafogiannis, Diana Gapinski, and Amie Walker, and its Correct Care Medical Director Raymond Herr. (Dkt. 80.) Perales alleges violations of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 for denial of due process (Count I); unconstitutional confinement conditions (Count II); and adequate medical care (Count III). He also alleges intentional infliction of emotional distress (Count V).[1] Defendants LaSalle County, LaSalle County Sheriff's Office, Templeton, Edgcomb, and Von Ruden move to dismiss Counts I-III and V. (Dkt. 93.) Defendants Correct Care Solutions, Dr. Adeyemi, Kaszynski, Alafogiannis, Gapinski, Walker, and Herr move to dismiss the remainder of Counts III and IV. (Dkt. 104.) For the below reasons, the Court in part grants and denies Defendants' Motions to Dismiss. [93, 104]

---

[1] Perales originally alleged another state count for medical malpractice (Count IV) (Dkt. 80, at 28) but waives this claim in order to streamline the litigation. (Dkt. 108, at 2 n.1.) The Court therefore considers this a motion to withdraw Count IV and grants that motion.

## BACKGROUND

On August 26, 2013, Constantino Perales ("Perales") was arrested and taken to the LaSalle County Jail. (Dkt. 80, ¶ 27.) He arrived with a history of diabetes, glaucoma, arthritis, and hypertension. (*Id.* at ¶ 26.)

### I. Solitary Confinement

Upon intake, Perales received mental health and suicide prevention screenings by the LaSalle County Jail nursing staff and Defendant Dr. Adeyemi O. Fatoki ("Dr. Fatoki"). (*Id.* at ¶ 30.) Perales alleges that the screenings did not identify any risk factors for suicide, including signs of depression, reported suicidal thoughts or ideations, or a history of suicide attempts. (*Id.*) In fact, Dr. Fatoka noted that Perales was euthymic (not depressed) with an appropriate affect. (*Id.* at ¶ 30.) Dr. Fatoki nonetheless wrote in an August 27 report that Perales "is high risk for suicide" and asked that the jail house Perales in isolation. (*Id.* at ¶ 30.) From the time of his intake on August 26, 2013 until his transfer on November 7, 2013, Perales was housed in isolation – a total of 72 days. (*Id.* at ¶ 27.) Perales did not receive notice of the reason for this housing assignment nor the opportunity to present his views. (*Id.* at ¶ 32.) He was first held in the "Booking Cell" from August 26 until October 8, 2013. (*Id.* at ¶ 33.) Then, on October 8, Jail Superintendent and Defendant Jason Edgcomb ("Edgcomb") informed Perales that he would be moved to another solitary confinement unit in the "J Block Cell." (*Id.*) Perales was housed in the J Block Cell until his transfer to another facility on November 7, 2013. (*Id.* at ¶¶ 27, 33.)

### II. Cell Conditions

Perales alleges that the Booking Cell and J Block Cell shared "substantially identical" "nightmarish conditions" (*id.* at ¶ 33), including: limited human contact with only his attorney and periodic family visits (*id.* at ¶ 34); 24-hour exposure to light that "dimmed only slightly at

2

night" without being allowed to cover his face (*id.* at ¶¶ 35-36); constant noise, including taunts (*id.* at ¶ 37); "excessive[] cold" "[a]t all times" (*id.* at ¶ 39); no pillow to sleep (*id.* at ¶ 40); pests such as a brown recluse spider and fleas (*id.* at ¶ 41); and inadequate access to shower facilities and an exercise yard (*id.* at ¶¶ 42-43). Perales claims that he raised the issues about light, noise, temperature, pillow, and pests with jail officials to no avail. (*Id.* at ¶¶ 35, 37, 39-41.) Regarding the constant light, Perales complained to Defendant Officer Kerry Von Ruden ("Von Ruden"). Von Ruden responded, "Your lawyer already talked to the judge about that. There is nothing I can do." (*Id.* at ¶ 35.) Perales alleges that he suffered from insomnia, sleep deprivation, anxiety, and panic attacks, which aggravated his hypertension and high blood sugar as a result of his exposure to constant light and noise. (*Id.* at ¶ 38.) He also states that sleeping without a pillow caused him spine, neck, and heel pain that exacerbated his arthritis. (*Id.* at ¶ 40.) Perales also alleges that these conditions and the "extreme isolation" caused him to suffer a stroke, elevated blood sugar levels and worsened diabetic condition, panic attacks and a panic disorder, general anxiety disorder, insomnia, and post-traumatic stress disorder. (*Id.* at ¶ 45.)

### III. Medical Treatment

Meanwhile, Perales sought medical care for his health conditions, in particular his diabetes, glaucoma, and hypertension. He informed the prison staff about these conditions upon arrival. (*Id.* at ¶ 47.) Defendant Dr. Fatoki examined Perales for the first and only time on August 27, 2013, "in the presence of the nursing staff."[2] (*Id.* at ¶ 48.) Outside of this, Perales alleges that Dr. Fatoki visited the facility about once per month. (*Id.*)

#### A. Hypertension

At his intake appointment with Dr. Fatoki, Perales's blood pressure measured higher than recommended at 142/76. (*Id.* at ¶ 58.) Correct Care Personnel took Perales's blood pressure a

---

[2] Perales does not clearly state which of the nursing staff was present for this examination. (*See* Dkt. 80, ¶ 48.)

total of three times during his stay.³ (*Id.* at ¶ 59.) On September 6, 2013, Perales submitted a medical request form because he had a headache and blurred vision and he wanted a nurse to check his blood sugar and blood pressure. (*Id.* at ¶ 60.) Defendant Nurse Rita Alafogiannis ("Alafogiannis") saw him the next day and completed a health assessment in which she noted that Perales reported suffering from memory loss and numbness in his hands, arms, feet, and legs. (*Id.*) Perales alleges that Dr. Fatoki reviewed this assessment on September 9, and neither he nor Alafogiannis pursued further steps. (*Id.*) In the meantime, on September 8 Perales submitted another medical request, this time asking to see a medical professional because he was experiencing loss of memory and balance. (*Id.* at ¶ 61.) Perales alleges that Correct Care Personnel knew that he suffered from hypertension, that these were symptoms associated with strokes, and that nonetheless the staff did not take steps to provide Perales urgent care. (*Id.*)

In early October, Perales began to suffer from dizziness and "near syncope" (known more commonly as fainting) when he got up from bed. (*Id.* at ¶ 61.) He lost his balance and bumped into the walls of his cell. (*Id.* at ¶ 62.) On October 18, 2013, Perales submitted a medical request to see a doctor because he was experiencing a sudden drop in blood pressure when he stood up. (*Id.* at ¶ 63.) He said he had been experiencing dizziness and fainting for more than a week and that his symptoms were worsening. His heart beat rose to 100 beats per minute. Correct Care Personnel did not see Perales until a week later on October 25. (*Id.*) At that time, Defendant Nurse Gapinski recommended that the facility monitor Perales's blood pressure monthly per facility protocol. (*Id.* at ¶ 64.) Gapinski did not refer Perales to a doctor or urgent care facility, nor monitor his blood pressure more frequently. (*Id.*) Perales continued to faint, including once on November 4 and four times on November 5, 2013. (*Id.* at ¶ 65.) While two

---

³ This Order refers to Dr. Fatoki and Nurses Rita Alafogiannis ("Alafogiannis"), Denise Kaszynski ("Kaszynski"), Diana Gapinski ("Gapinski"), and Amie Walker ("Walker") collectively as "Correct Care Personnel."

4

FBI agents transported Perales in order to transfer him into federal custody on November 7, they had to support Perales against a wall because he lost his balance. (*Id.* at ¶ 66.)

On March 12, 2014, Perales learned that he had suffered one or more strokes during his time at the LaSalle County Jail. (*Id.* at ¶ 67.) As a result, Perales alleges that he has suffered a host of physical injuries, some potentially permanent, including loss of function in his hand, shoulder, leg, foot, and lip on the right side of his body; loss of balance to his right side, causing frequent falls; frequent choking on food and water; voice fatigue; occasional loss of bladder control; and hearing loss. (*Id.* at ¶ 68.)

### B. Diabetes

For his diabetes, Perales asked Dr. Fatoki on August 27, 2013 that he be able to continue with the same diabetes medications that he was taking prior to his incarceration in LaSalle County – Victoza or Actos. (*Id.* at ¶ 51.) Dr. Fatoki instead prescribed metformin, an alternative medication that Perales said he could not take because of the side effects. (*Id.*) Perales alleges that he suffered severe abdominal distension as a result of the metformin. (*Id.* at ¶ 52.) He informed Defendant Nurse Alafogiannis about this on September 1, 2013, and two days later Perales was prescribed glipizide, a sulfonylurea. (*Id.* at ¶ 53.) Perales informed her that he could not take a sulfonylurea because it would cause hypoglycemia. Perales suffered from hypoglycemia allegedly as a result of taking the second prescribed medication. (*Id.*) Perales alleges that Correct Care Personnel checked his blood pressure three times during his time at the facility and alleges that medical personnel generally only check the blood sugar levels of inmates with diabetes once a month. (*Id.* at ¶ 54.) On one of these occasions on August 29, 2013, Gapinski measured Perales's blood sugar level at 155 – a high level for Perales. (*Id.* at ¶ 55.) Nurse Gapinski attributed the increase to stress and took no further action. (*Id.*) To keep his

blood sugar level under control, Perales submitted a medical request on September 11, 2013, to ask for food that contained more protein and fewer carbohydrates. (*Id.* at ¶ 56.) Defendant Nurse Walker denied this request. (*Id.*) Perales then allegedly suffered from abdominal distention and pain, low blood sugar episodes, and worsening diabetic condition. (*Id.* at ¶ 57.)

### C. Glaucoma

Similarly, Perales brought his own eye drop prescription for his glaucoma when he arrived at LaSalle County, but Correct Care Personnel did not permit him to use these from the day of his arrival until twelve days later on September 7, 2013. (*Id.* at ¶ 69.) After this, Correct Care Personnel did not administer the drops consistently, missing at least five days. (*Id.* at ¶ 70.) Perales alleges that this worsened his glaucoma, which has left him partially blind in his right eye. (*Id.* at ¶ 71.)

## IV. Filing Suit

Perales alleges that Defendants LaSalle County, Sheriff Templeton, Correct Care,[4] and Dr. Raymond Herr ("Herr") created, implemented, oversaw, and supervised the policies, practices, and procedures for the medical care provided to inmates at LaSalle County Jail. (*Id.* at ¶ 96.) Perales alleges that that they had knowledge that inmates like Him were "routinely denied adequate medical care" and yet Defendants "did nothing" to ensure otherwise. (*Id.* at ¶ 97.) Perales alleges that certain policies led to these outcomes, including: 1) that physicians only visit the jail once a month; 2) inmates with stroke symptoms do not receive access to a doctor; 3) inmates with diabetes and hypertension only get monthly monitoring for their blood sugar and blood pressure, respectively; 4) inmates receive lower-cost prescriptions without the requisite follow-up to ensure effectiveness or ensure against harmful side effects; and 5) corrections

---

[4] Perales adds that Correct Care contracted with LaSalle County to provide healthcare to their pretrial detainees at the jail at all times relevant to this case. (Dkt. 80, ¶ 96.)

officers and medical personnel do not provide access to food that accommodates medically-necessitated diets. (*Id.* at ¶ 98.) As a result, Perales alleges, he has suffered and continues to suffer mental anguish and "severe emotional distress." (*Id.* at ¶ 113.)

Perales filed his original complaint *pro se* on November 6, 2015 and his First Amended Complaint two weeks later on November 20. (Dkt. 1; Dkt. 5.) Defendants County of LaSalle, LaSalle County Sheriff's Office, Templeton, Edgcomb, and Correct Care Solutions filed two partial Motions to Dismiss the First Amended Complaint (Dkt. 16; Dkt. 22). The Court granted with prejudice LaSalle Defendants' motion to dismiss Perales's cell conditions for untimeliness because, at that time, Perales only alleged issues with his Booking Cell, which he occupied only until October 7, 2013. (Dkt. 49, at 1.) The Court granted without prejudice LaSalle Defendants' Motion to Dismiss claims for failure to protect, violations of procedural due process, and deliberate indifference. (*Id.*) The Court also granted without prejudice Correct Care Solutions' Motion to Dismiss the claims against it for deliberate indifference. (*Id.*) Perales moved for recruited counsel on June 8, 2016, and the Court granted his request two days later. Perales filed his Second Amended Complaint on September 22, 2016 (Dkt. 70) and a Corrected Second Amended Complaint on November 1, 2016 (Dkt. 80) with leave of the Court. Defendants now move to partially dismiss the Second Amended Complaint. (Dkt. 93; Dkt. 104.)

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the 12(b)(6) stage, all of the "factual allegations contained in the complaint" must be "accepted as true." *Twombly*, 550 U.S. at 572. Furthermore, well-pled facts are viewed in the light most favorable to the plaintiff. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). But "legal conclusions and conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

## **DISCUSSION**

### I. Individual and Institutional Liability for Section 1983 Claims

Perales filed three claims pursuant to Section 1983. First, he alleges the denial of his due process rights leading up to his placement in solitary confinement against Defendants La Salle County, Sheriff Templeton (in his official and individual capacities), and Superintendent Edgcomb (Count I). Second, he alleges that those same Defendants plus Officer Von Ruden should be held liable for his unconstitutional confinement conditions (Count II). Lastly, he filed a claim for the denial of adequate medical care against Defendants Correct Care, LaSalle County, Sheriff Templeton (in his official and individual capacities), Correct Care Personnel, and Herr (Count III). (Dkt. 80, at 21, 23, 25.)

To begin, Templeton and Edgcomb assert that all claims against them in their individual capacities should be dismissed under Rule 12(b)(6) because the Second Amended Complaint does not allege facts to support that they were personally involved in the allegedly unconstitutional violations. (Dkt. 93, at 9-10.) "Under any theory, to be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik-Abdi v. McClellan*, 37

F.3d 1240, 1248 (7th Cir. 1994)). In order for supervisors to be liable in their individual capacity for a 1983 claim, "they must be personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (quotation omitted). For a complaint to properly plead that a supervisor was personally responsible, "the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988)). The Second Amended Complaint contains no allegations demonstrating that Templeton or Edgcomb knew about, facilitated, condoned, or turned a blind eye to Perales's pretrial conditions or to the medical treatment the Jail provided to him. Perales comes closest when he notes that Edgcomb notified Perales that he would be transferred to another solitary confinement cell and had knowledge that Perales complained about exposure to constant light. (*See* Dkt. 80 at ¶¶ 33, 35.) Yet, this does not allege that Edgcomb would have reason to believe that Perales was being kept in solitary confinement without the benefit of constitutionally required due process in the making of that decision. The Court therefore grants Templeton and Edgcomb's Motion to Dismiss all claims against them (Counts I, II, & III) in their individual capacity.[5]

Defendant Officer Von Ruden argues that the sole claim against him in Count II should be dismissed because Perales did not name him as a defendant in a timely manner. The Court agrees. While Rule 15(c) allows parties to add otherwise time-barred defendants if they "relate back" to the original complaint, the party still must have "kn[own] or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c). Relating back generally occurs where the proper defendant is already before the court and the Rule can merely correct the name under which the

---

[5] Additionally, Edgcomb argues that the Second Amended Complaint fails to state a claim against him in his official capacity (Dkt. 93, at 10) but in his complaint Perales only sues Edgcomb in his individual capacity (*see* Dkt. 80, ¶ 15), so the Court finds this argument moot and need not address it.

defendant has been sued, but a plaintiff fails to meet the requirements of Rule 15(c) when the original and amended complaint taken together demonstrate that the plaintiff chose not to include the defendant in the original complaint. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 552 (2010); *Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980).[6] In his original complaint on November 15, 2015, Perales managed to identify Von Ruden among his facts as the officer on duty when Perales asked whether he could do something about the bright light in his cell. (Dkt. 1, ¶ 4; Dkt. 5, ¶ 40.) Given this, Perales was aware of Von Ruden and his role in the matter at the time of the original complaint. Perales now adds Von Ruden as a Defendant in his second amended complaint, filed November 1, 2016 – almost one year after the original complaint, and nearly three years after the alleged issues at hand. As Perales provides, courts permit claims to relate back after asking first "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition...." *Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011) (citing *Krupski* 560 U.S. at 547). Perales does not provide any factual allegations to support that Von Ruden would have known that Perales would have sued him but for mistake, such as his reading the original complaint and inferring the possibility of suit against him, as in *Joseph*. (*See* Dkt. 107, at 8-10.) *See id.* at 560-61. Further, Von Ruden merely responded to Perales when he complained about the light: "Your lawyer already talked to the judge about that. There is nothing I can do." (Dkt. 80 at ¶ 35.) The Court does not think it

---

[6] Later amended complaints can relate back to an original complaint such that a plaintiff can add claims that he finds advantageous as he crafts his case. *Cf. Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013). However, *Luevano* and cases that later rely on *Luevano* for this principle involve additional claims later stated against the same defendant. *See id.*; *see, e.g.*, *Lewis v. City of Chicago*, No. 14 C 7317, 2016 WL 3752974, at *3 (N.D.Ill. July 13, 2016) (finding that *Monell* claim in amended complaint related back where plaintiff originally filed *respondeat superior* claim against the City, which the court construed as a *Monell* claim, and in any case had given notice to the City of the suit); *Olutayo v. Husic*, No. 15 C 2109, 2016 WL 687907, at *1 (N.D.Ill. Feb. 19, 2016) (claim related back where Husic "was a named Defendant in this original pro se pleading…"); *Mcnally v. Illinois Bell Telephone Co.*, 15 C 2802, 2016 WL 212942, at *4 (N.D.Ill. Jan. 19, 2016) (severed suit relates back to original suit against the same defendant because the core inquiry is whether the defendant was sufficiently on notice).

would be reasonable to expect that Von Ruden would have anticipated being sued based on that interaction. Accordingly, the addition of Von Ruden does not relate back to the original complaint. Barred by the statute of limitations, the Court dismisses the claim against Von Ruden in Count II.

Further, Correct Care Personnel argue that Perales does not sufficiently allege their personal involvement in order for a deliberate indifference claim to stand. Deliberate indifference claims require a plaintiff to allege that a particular defendant knew of a substantial risk of harm yet disregarded that risk. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Negligence and recklessness do not suffice. A plaintiff must allege that a defendant actually knew of and disregarded a substantial risk of harm. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Such facts need only be alleged generally at this stage. "A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response, and that permanent injury ensued, is enough to state a claim on which relief may be granted—if it names the persons responsible for the problem." *Burks*, 555 F.3d at 594; *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (reversing dismissal where plaintiff alleged "that the medical defendants, despite their knowledge of his serious medical condition, ignored his request for effective treatment"). Defendants are correct that Perales does not sufficiently allege his claim against Nurse Kaszynski, as he does not provide any specific factual allegations in his Second Amended Complaint to support his assertions that she had knowledge of his conditions that she ignored. (*See* Dkt. 80, ¶ 48.) He does, however, provide specific allegations about the notice provided to Dr. Fatoki and Nurses Alafogiannis, Gapinski, and Walker about what he reported to them about his conditions and the lack of response stemming from that notice (*see id.* ¶¶ 51, 53, 55-56, 58, 60, 64). The same is true for Herr, the Correct Care Medical

11

Director at that time.  As in *Burks*, it may be possible to show through discovery that the physicians and nurses to whom Perales spoke reported to Herr about Perales's condition, and that it was Herr rather than the other members of the health unit who made the decision to leave the condition untreated.  *Burks*, 555 F.3d at 594.  As such, Perales's complaint need not say that he ever spoke with Herr about his conditions.  *Id.*  Accordingly, the Court dismisses without prejudice Perales's claims against Kaszynski, but all other Correct Care Defendants remain in Count III.

LaSalle County also moved to dismiss the Section 1983 claims against it but acknowledged in its Reply that it is an indispensable party in this matter because of its potential liability for the payment of the damages for the acts of the Sheriff or his personnel.  *See* 55 Ill. Comp. Stat. 5/3–6017; *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2009).[7] (Dkt. 116, at 7.)  Therefore Perales's claims against the County in Counts I, II, and III still stand.

## II. Timeliness of the 1983 Claims

LaSalle County and Sheriff Templeton in his official capacity contend that the two-year statute of limitations for Section 1983 claims in Illinois bars Perales's claim for unconstitutional conditions (Count II).  Similarly, Correct Care, its Personnel, and Medical Director Herr move to dismiss Perales's claim for deliberate indifference (Count III) on the basis that it is time barred. (Dkt. 93, at 12-13; Dkt. 104, at 3.)

In a Section 1983 claim, the Court must adopt the forum state's statute of limitations for personal injury claims.  *See Owens v. Okure*, 488 U.S. 235, 240 (1989).  In Illinois, the statute of limitations for personal injury claims is two years.  735 ILCS 5/13-202; *see Ray v. Maher*, 662

---

[7] The County nonetheless argues that this should be contained to a count for indemnification, which should still allow for the County's dismissal because Perales has not filed such a claim.  *See e.g.*, *Martinez v. Sgt. Hain*, 16-cv-2237, 2016 WL 7212501, at *6 (N.D. Ill. December 13, 2016). Such support only suggests that a plaintiff may file such a claim, not that he must, so this argument fails.

12

F.3d 770, 772 (7th Cir. 2011). A claim accrues for Section 1983 purposes when the plaintiff knows or should know that her constitutional rights have been violated. *See Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). This determination of accrual consists of two steps. First, the Court must identify the injury. Second, it must decide the date on which the plaintiff could have sued for that injury because she knew or should have known that her rights were violated. *Id.* "A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause. The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). On the other hand, for continuing constitutional violations, "the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). A violation is "continuing" where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Id.* (quoting *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001)) (internal quotation omitted). A refusal to take action accrues through the point that the defendants "ha[ve] the power to do something about the condition, which is to say until [the plaintiff] left the jail." *Debrow*, 705 F.3d at 770 (quoting *Heard*, 253 F.3d at 318).

Regarding Perales's Count II claim during his time in the Booking Cell, the Court refers Perales to its earlier order dismissing this claim with prejudice for being untimely. (Dkt. 49, at 9.) However, on the face of the Second Amended Complaint, Perales's claims as to the J Block cell and the suffering he alleged from his medical conditions continued until he left the jail on November 7, 2013. Even with the Amended Complaint detailing facts about when Perales may

13

have first known about his conditions, because the Defendants had the power to do something about these conditions up until Perales left on November 7, their actions constitute a continuing violation through his departure. *See Turley*, 729 F.3d at 651; *Debrow*, 705 F.3d at 770 (quoting *Heard*, 253 F.3d at 318). Accordingly, Perales's filing his original *pro se* complain on November 6, 2015 fell just within this two-year period for these claims. (Dkt. 1.) The Court therefore grants Defendants' motion to dismiss Perales's confinement conditions claim as it relates to the Booking Cell, which Perales left on October 7, and denies the motions to dismiss based on timeliness with respect to the J Block Cell (Count II) and deliberate indifference to Perales's medical conditions (Count III).

### III. Sufficiency of the Solitary Confinement 1983 Claim

The Court reviews Perales's Second Amended Complaint for the sufficiency of Count I. The LaSalle Defendants argue that Perales's claim for Section 1983 relief for placement in administrative isolation in violation of his right to procedural due process should be dismissed because he does not plead facts to show that his assignment served punitive purposes. (Dkt. 93, at 12.) While "[a] pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard…no process is required if he is placed in segregation not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). In short, "[a]s long as the purpose was indeed a preventive rather than a punitive one, he would not be entitled to notice and a hearing." *Id.* However, if restrictions do not reasonably relate to a legitimate goal – for example, decisions that were made arbitrarily – "a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees…." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), criticized on other grounds in *Johnson v. Phelan*, 69 F.3d 144 (7th Cir.

1995). Ambiguous rationale provided by jail authorities leaves a question of fact as to whether segregation occurred for punishment or legitimate preventative purposes. *Higgs*, 286 F.3d at 438-39.

Perales now sufficiently pleads his facts to state a procedural due process claim under Section 1983. Perales alleges that Dr. Fatoki recommended that the jail place Perales in solitary confinement because he was a "high risk for suicide" while also noting that Perales was euthymic (not depressed) with an appropriate affect. (Dkt. at ¶ 30.) Perales also alleges that the mental health and suicide prevention screening he received upon intake did not identify any risk factors for suicide, including signs of depression, reported suicidal thoughts or ideations, or a history of suicide attempts. (*Id.*) These facts taken together create an incongruence and leave ambiguity that, taken in the light most favorable to Perales, make it plausible that the prison decided to house Perales in solitary confinement without a legitimate preventative purpose. It is also reasonable to infer that the LaSalle Defendants based their decision on this report, which would be difficult for Perales to show at this time without the benefit of discovery. Accordingly, the Court denies the LaSalle Defendants' motion to dismiss Count I. *See Higgs*, 286 F.3d at 438-39; *Bell*, 441 U.S. at 535.

## IV. Intentional Infliction of Emotion Distress

The remaining LaSalle and Correct Care Defendants move to dismiss Perales's claim to Intentional Infliction of Emotional Distress ("IIED") (Count V), arguing that it is untimely and inadequately pled in the alternative. (Dkt. 93, at 15; Dkt. 104, at 15.) Illinois requires that any civil action commenced against a local entity or any of its employees for any injury must be filed within one year of the date of injury or the accrual of the action, and that any action for injury "arising out of patient care" must be brought within two years of the date when the plaintiff

15

knew or should have known of the injury. 745 ILCS 10/8-101(a)-(b). Because Perales filed his complaint on November 6, 2015, more than one year after he left the jail on November 7, 2013, the Court dismisses with prejudice his IIED claim on timeliness grounds for any part of his claim that does not "aris[e] out of patient care." *See* 745 ILCS 10/8-101(a)-(b).

To the extent that his claim arises out of patient care, Perales must sufficiently allege that Defendants' conduct is truly extreme and outrageous and that they possessed the intent to inflict severe emotional distress through their conduct, or at least had knowledge of a high probability that the conduct will inflict such distress. *Cairel v. Alderden*, 821 F.3d 823, 835 (7th Cir. 2016) (quotation and citation omitted). Extreme and outrageous conduct in this context "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Id.* Perales alleges that Defendants conduct occurred within the scope of their work and does not plead facts beyond this to show that their actions were extreme or outrageous. Further, Perales only argues by assertion in his Second Amended Complaint that "Defendants intended their conduct to cause severe emotional distress to Perales or at least knew that there was a high probability that their conduct would cause severe emotional distress." (Dkt. 80, ¶ 110.) He does not plead factual allegations to support this. Perales therefore fails to allege each of the elements of his IIED claim. *See Cairel*, 821 F.3d at 835. The Court dismisses Perales's IIED claim (Count V).

## V. Punitive Damages

Defendants also move to strike Perales's general request for punitive damages that he incorporates into the Conclusion of his Second Amended Complaint. (Dkt. 80, at 29.) Correct Care Defendants move to strike this as to Counts IV and V, which no longer stand, so their motion is rendered moot. (Dkt. 104, at 15-16.) LaSalle County Defendants move to strike

punitive damages because local entities are immune from punitive damage awards in civil actions as a general rule. (Dkt. 93, at 15.) Illinois law indeed establishes that "a local public entity is not liable to pay punitive or exemplary damages in any action," and "no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official…capacity." 745 ILCS 10/2-102. LaSalle County and Sheriff Templeton, the only remaining LaSalle Defendants, cannot be held liable for punitive damages under Section 10/2-101 as a local public entity and public official being sued in his official capacity. The Court therefore grants LaSalle Defendants' motion to strike Perales's claim to punitive damages against them.

## CONCLUSION

For these reasons, the Court grants Defendants' Motion to Dismiss Perales's claims against Defendant Von Ruden with prejudice (Count II) and Defendants Templeton, Edgcomb, and Kaszynski in their individual capacities without prejudice (Counts I, II, III). The Court reiterates its earlier dismissal with prejudice against Perales's Count II claim as it relates to his time in the Booking Cell. (*See* Dkt. 49.) The Court further grants Defendants' motion to dismiss Perales's IIED claim (Count V) with prejudice for LaSalle Defendants as it pertains to injury outside of Perales's patient care and otherwise without prejudice. The Court denies the remainder of Defendants' Motion to Dismiss. [93], [104]

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 10, 2017